Application for Search and Seizure Warrant

FILED _____ LODGED
_____ RECEIVED
May 3, 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

**In the Matter of the Search of:**

King, Shynell M.

**Case No.** MJ20-5104

## APPLICATION FOR A SEARCH WARRANT FOR BLOOD SAMPLE

I, Vitaliy A. Stepanyuk, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that a sample of blood consisting of one of more tubes or vials should be taken from the following person:

King, Shynell M., DOB October 13, 1989

located in the Western District of Washington and that this blood sample is evidence of the following crime or crimes.

- ☒ Driving While Under the Influence in violation of RCW 46.61.502, 18 U.S.C. § 13, and 36 C.F.R § 4.23 or 38 C.F.R. § 1.218

- ☐ Physical Control of a Vehicle While Under the Influence of Alcohol or Drugs in violation of RCW 46.61.504, 18 U.S.C. § 13, and 36 C.F.R § 4.23 or 38 C.F.R. § 1.218

- ☐ Driver under Twenty-One Consuming Alcohol or Marijuana in violation of RCW 46.61.503 and 18 U.S.C. § 13

- ☐ Vehicular Homicide in violation of RCW 46.61.520 and 18 U.S.C. § 13

- ☐ Vehicular Assault in violation of RCW 46.61.524 and 18 U.S.C. § 13

- ☐ _____

This application is based on the facts set forth in the attached affidavit which is incorporated herein as if fully set forth.

Pursuant to Fed. R. Crim. P. 4.1 & 41(d)(3), this warrant is presented:

☒ By reliable electronic means.    ☐ Telephonically (and recorded).

Applicant's Signature
Vitaliy A. Stepanyuk / SGT

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on this 03 day of May, 2020.

THE HONORABLE MARY ALICE THEILER
UNITED STATES MAGISTRATE JUDGE

1  STATE OF WASHINGTON          )
                                )
2  COUNTY OF PIERCE             )

3

4                 AFFIDAVIT OF VITALIY STEPANYUK

5        I,  Vitaliy A. Stepanyuk, a Sergeant with Joint Base Lewis-McChord (JBLM)

6  Police, JBLM, Washington, having been duly sworn, state as follows:

7                      AFFIANT BACKGROUND

8        1.       I have served as a law enforcement officer for the past 5 years. My training

9  and experience relevant to the investigation discussed below includes the following:

10       ☐     Basic Training at the Federal Law Enforcement Training Center

11       ☒     Basic Law Enforcement Training at the Department of the Army
12             Military Police Academy

13
         ☒     Standardized Field Sobriety Testing
14
15       ☒     Advised Roadside Impaired Driving Enforcement Training

16  I am SGT Vitaliy A. Stepanyuk badge #406, currently assigned to the Traffic

17  Management & Collision Investigation section. I have over 5 years of training and

18  experience detecting, investigating, and arresting people for driving under the influence

19  of alcohol and / or drugs. My past training includes instruction in the standardized field

20  sobriety tests in 2016 while attending the Schofield Barracks Police Academy. I received

21  initial training on the Intoxilyzer 8000 in 2017. In September of 2017, I also completed

22  the Northwest University Traffic Crash Investigations course. In October of 2019, I

23  completed a standardized field sobriety test refresher course while completing the

24  Washington State Field Sobriety Tests and DRAEGER breath-testing course. In

25  November of 2019, I completed a standardized field sobriety test refresher course while

26  completing the Advanced Roadside Impaired Driving Enforcement (A.R.I.D.E.) class. I

27  am currently certified as an operator and instructor for the breath-testing instrument in the

28  State of Washington. I have been a traffic collision investigator and DUI enforcement

AFFIDAVIT OF VITALIY STEPANYUK - 1

1  Officer with the Joint Base Lewis-McChord Police Department since 2019. I am also
2  trained to recognize the signs and evidence of an alcohol and / or drug related collision.
3  Through my past training and experience, I have learned to recognize the signs of alcohol
4  and / or drug impairment in people and to determine whether a person's ability to drive a
5  motor vehicle safely is impaired. I also know from my past training and experience that
6  most drugs once ingested, including alcohol, will be detectable in a person's blood. I
7  have approximately 7 DUI arrests and approximately 20 DUI assists throughout my
8  career in law enforcement.

9        2.     The information presented in this affidavit is:

10        ☒     Based on my personal observations and interviews that I have
11                 conducted.

12        ☒     Based on the personal observations and interviews conducted by CPL
13                 Ramirez, who has been a Department of the Army Security Guard at
               JBLM for two years. I have learned that this individual has received
14                 all the relevant training as a DASG (Gate Guard). That training
15                 includes participating in an Field Training Officer process, essentially
               shadowing an experienced gate guard. DASGs are not trained as
16                 police officers, not do they receive training regarding Standardized
17                 Field Sobriety Tests. Instead, they are instructed to call JBLM Police
               to the gate for further evaluation if they smell alcohol/drugs on a
18                 driver entering the base. The gate guard then provides a statement
19                 describing their observations of intoxication, including that the
               individual was the driver of the vehicle and how they were identified.

20
      <u>INTRODUCTION AND PURPOSE OF THE AFFIDAVIT</u>

21        3.     The purpose of this affidavit is to seek a search warrant to authorize me or
22  other law enforcement officers to direct a physician, a registered nurse, a licensed
23  practical nurse, a nursing assistant as defined in Chapter 18.88A of the Revised Code of
24  Washington (RCW), a physician assistant as defined in chapter 18.71A of the RCW, a
25  first responder as defined in chapter 18.73 of the RCW, an emergency medical technician
26  as defined in chapter 18.73 of the RCW, a health care assistant as defined in chapter
27  18.135 of the RCW, or any technician trained in withdrawing blood to extract a blood
28  sample consisting of one or more tubes or vials from King, Shynell M., DOB October 13,

1   1989, (hereafter "the Subject"). This warrant is requested for the purpose of gathering
2   evidence of the following crime(s):

3   ☒   Driving While Under the Influence in violation of RCW 46.61.502, 18
4       U.S.C. § 13, and 36 C.F.R § 4.23 or 38 C.F.R. § 1.218

5   ☐   Physical Control of a Vehicle While Under the Influence of Alcohol or
    Drugs in violation of RCW 46.61.504, 18 U.S.C. § 13, and 36 C.F.R §
6   4.23 or 38 C.F.R. § 1.218

7   ☐   Driver under Twenty-One Consuming Alcohol or Marijuana in violation
    of RCW 46.61.503 and 18 U.S.C. § 13
8

9   ☐   Vehicular Homicide in violation of RCW 46.61.520 and 18 U.S.C. § 13

    ☐   Vehicular Assault in violation of RCW 46.61.524 and 18 U.S.C. § 13
10
    ☐   _____
11

12      4.      I am seeking to present this application for a search warrant by electronic
13  means because the natural metabolization of alcohol or drugs in the bloodstream may
14  result in the loss of this evidence in the time it would take to present a search warrant
15  application in a more traditional fashion.

16                      SUMMARY OF PROBABLE CAUSE

17      5.      As a result of my duties, I am familiar with the jurisdictional boundaries of
18  Joint-Base Lewis-McChord (JBLM), Washington. The incident described below occurred
19  within these jurisdictional boundaries, an area within the special maritime and territorial
20  jurisdiction of the United States as defined in 18 U.S.C. § 7.

21      6.      The initial contact with the Subject occurred on 03 May 2020 at
22  approximately 0147 at Madigan Gate. CPL Ramirez observed the Subject approach
23  Madigan gate in a Grey 2015 Ford Taurus. Upon contact for an identification to gain
24  access to the installation, CPL Ramirez noticed an odor of an alcoholic beverage
25  emanating from the vehicle. CPL Ramirez identified the Subject from her identification
26  card as King, Shynell M., DOB October 13, 1989, then asked the Subject to step out of
27  her vehicle and open her trunk during a routine trunk inspection. When the Subject
28  stepped out of her vehicle, CPL Ramirez observed her attempting to focus on how to

AFFIDAVIT OF VITALIY STEPANYUK - 3

1   walk to the rear of her vehicle. Once at the rear of the vehicle, he asked her to open the

2   trunk. Once the trunk was open, he noticed her stumble and catch her balance, at which

3   point the trunk inspection was concluded. The Subject returned to her vehicle. CPL

4   Ramirez asked the Subject to remove her keys from the ignition, and she refused and said

5   that it was "due to her being black." CPL Ramirez also observed the Subject had slurred

6   speech and an excessive amount of perfume.

7       7.      Based on my training and experience, I believe the Subject may be under

8   the influence of intoxicants or drugs for the following reasons: I (Vitaliy A. Stepanyuk)

9   was then dispatched to Madigan gate for a possible DUI. Upon arrival, I noticed the

10  Subject sitting inside the above vehicle. I contacted CPL Ramirez who informed me of

11  the above. Before I made contact, I was able to hear the Subject talking loudly at the gate

12  guards stating that she just wants to go home.

13      8.      Upon approach of the above vehicle, I immediately noticed an obvious odor

14  of an alcoholic beverage coming from the Subject and her vehicle. I introduced myself to

15  the Subject and she gave me a blank stare taking about 10 seconds to respond with "well

16  hello there." I informed the Subject that I smelled an odor of an alcoholic beverage and

17  asked her if she had any alcohol, to which she responded with "Ok, so I had one beer." I

18  asked her what one means, she said, "Are you serious? I know that it's one," and gave me

19  a confused look. The Subject had a flushed face, watery and droopy eyes, slurred speech,

20  and an inability to focus. I then asked the Subject to step out of her vehicle and she said,

21  "No I won't." I then instructed her again to step out and she did. The Subject took a

22  considerable amount of time to find her footing on the asphalt surface as she tried to get

23  out of her vehicle. Once she was out, she held onto her car as she walked to the rear with

24  me.

25      9.      I then asked the Subject if she would be willing to conduct voluntary

26  Standardized Field Sobriety Tests (SFSTs) for me and she said "yes." I walked the

27  Subject over to a well-lit area with a natural generally straight line on the pavement. The

28  subject then turned to me and clenched her fists, picking them up in a "fight" like manner

AFFIDAVIT OF VITALIY STEPANYUK - 4

and stance. Then after about 5 seconds she said, "no I'm just playin" and relaxed her hands and said "ok let's go." I then asked the Subject preliminary questions starting with "Are you under the care of a dentist or a doctor?", and the Subject started to look around and responded with "If my husband puts me on it then I would be" in a loud voice. I then asked her if she had any TBI (traumatic brain injury) and she responded with "pshhh no" and then went on talking about how her husband does not tell her everything. I attempted to ask the Subject additional basic preliminary questions, but she kept interrupting me and was unable to focus and answer any other questions.

10.     I then instructed the Subject to stand with her feet together, heels and toes touching, and with her arms down at her sides. The Subject took some time finding her footing and eventually was able to get into the starting position for the Horizontal Gaze Nystagmus (HGN) portion of the test. I informed the Subject to look at the tip of my pen, which had a blue light, and to look with her eyes only and not move her head. I observed no resting nystagmus, equal pupil sizes, and equal tracking. I then observed a nystagmus in both eyes during Lack of Smooth Pursuit both times. I observed a distinct and sustained nystagmus at maximum deviation in both eyes both times. I then observed an onset of nystagmus prior to 45 degrees in both eyes at various degrees throughout the 4 seconds in each eye both times. Lastly, I observed a Vertical Gaze Nystagmus (VGN) both times in each eye. What I observed was consistent with a person being under the influence of alcohol.

11.     I then attempted to get the Subject in the starting position for the Walk and Turn test. The Subject was unable to balance herself and was unable to follow my directions to place her left foot on the line and place her right foot in front of her left touching heel to toe. The Subject eventually got into the start position, and every time I tried to continue my instruction, she would interrupt with an unrelated subject and started counting the officers around her aloud. I gave the Subject multiple chances to perform the Walk and Turn test and she was unable to focus on my instructions. I then got out my PBT and asked the Subject if she would be willing to provide a PBT sample and she said

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"yes." I instructed her how to properly provide a breath sample and she looked away for a split second and looked back stating, "Nope, I want a new tube I didn't see you put that one on and I don't know if it's clean." I replaced the tube in front of the Subject again. I then again instructed her and as she was getting ready to put her lips on the tube, she wrapped her hands around the PBT device and I watched her turn it off with her pointer finger while blowing into the tube.

12.     At this point, I arrested the Subject and advised her of her constitutional rights, then transported her to the JBLM Police station (PMO). Upon arrival, the Subject wanted to speak with an attorney; one was provided for her to speak with over the phone. The Subject had an approximately 15 minute conversation with a public defender and then hung up the phone stating, "He just hung up his phone." I then read the Subject the implied consent warning, and every time I started reading it, she kept interrupting. I then informed the Subject that I am required to read this to you verbatim and she continued to interrupt me. I read the entire implied consent from the Washington State DUI Arrest Report and she stated that she would like to provide a breath sample and signed. I then completed the wait period and instructed the Subject on how to provide a proper breath sample. When the Subject put her mouth on the tube to provide that sample, she placed her tongue on the tube to prevent her breath from going inside. The machine did not detect anything because she did not blow into the tube. I did four attempts with the Subject, and she did the same thing every time stating "no no ok I will do it this time" but never did.

13.     The Subject:

☒ Has refused to take a breath Alcohol test on an instrument approved by the State Toxicologist or a federal agency for such breath testing.

☐ Is being treated in a hospital, clinic, doctor's office, emergency medical vehicle, ambulance, or other similar facility, or is at a location that lacks an instrument approved by the State Toxicologist or a federal agency for performing such breath testing, and has refused to submit to a blood test.

AFFIDAVIT OF VITALIY STEPANYUK - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

☐ Is incapable due to physical injury, physical incapacity, or other physical limitation of submitting to a breath alcohol test, and the defendant has refused to submit to a blood test.

☐ Has refused to submit to a blood test at the request of the undersigned.

☐ Was not offered an opportunity to take a breath alcohol test on an instrument approved by the State Toxicologist or a federal agency for such breath testing because:

    ☐ The available instrument is currently out of order

    ☐ The individual does not speak English and the implied consent warnings are not available in a language that the defendant understands

    ☐ _____

☐ Submitted to a breath test on an instrument approved by the State Toxicologist or a federal agency for such breath testing but the breath alcohol concentration reading of **BAC LEVEL** is not consistent with the defendant's level of impairment suggesting that the defendant is under the influence of a drug.

14.     A sample of blood extracted from the Subject if taken within a reasonable period of time after he/she last operated, or was in physical control of, a motor vehicle, may be tested to determine his/her current blood alcohol level and to detect the presence of any drugs that may have impaired his/her ability to drive. This search warrant is being requested about **four** hours after the Subject ceased driving or was found in in physical control of a motor vehicle.

<u>CONCLUSION</u>

15.     For the reasons stated above, I request authority to direct a physician, a registered nurse, a licensed practical nurse, a nursing assistant as defined in chapter 18.88A of the RCW, a physician assistant as defined in chapter 18.71A of the RCW, a first responder as defined in chapter 18.73 of the RCW, an emergency medical technician as defined in chapter 18.73 of the RCW, a health care assistant as defined in chapter 18.135 of the RCW, or a technician trained in withdrawing blood to extract a

AFFIDAVIT OF VITALIY STEPANYUK - 7

1  blood sample consisting of one or more tubes or vials from King, Shynell M., DOB
2  October 13, 1989.
3      16.     This application for a warrant is being presented electronically pursuant to
4  Fed. R. Crim P. 4.1 & 41(d)(3).
5
6      I certify (or declare) under penalty of perjury under the laws of the United States
7  that the foregoing is true and correct to the best of my knowledge, information and belief.
8      Dated this 03 day of May, 2020.
9
10
11                              SGT Vitaliy A. Stepanyuk, Affiant
                                Collision Investigator, JBLM Police
12
13      The above-named agent provided a sworn statement attesting to the truth of the
14  foregoing affidavit on 03 day of May, 2020.
15
16
17                              THE HONORABLE MARY ALICE THEILER
                                UNITED STATES MAGISTRATE JUDGE
18
19
20
21
22
23
24
25
26
27
28

AFFIDAVIT OF VITALIY STEPANYUK - 8